**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JASON WILSTERMAN, on behalf of himself and all others similarly situated,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civ. No. 24-1810** |
| | : | |
| **DELPHINUS ENGINEERING, INC.,** | : | |
| **Defendant.** | : | |

**O R D E R**

On April 30, 2024, Plaintiff Jason Wilsterman brought this data breach class action against Defendant Delphinus Engineering, Inc. (Doc. No. 1.) On November 14, 2025, I conditionally certified a Settlement Class and preliminarily approved the Parties' Settlement Agreement. (Doc. No. 44.) Plaintiff now asks me finally to certify the Settlement Class, grant final approval of the Settlement Agreement, and approve attorneys' fees and incentive awards. (Doc. Nos. 48, 49, 50.) Because I conclude that: (1) the Settlement Class meets the requirements of Rule 23(a) and 23(b)(3); (2) Notice was sufficient; (3) the terms of the Settlement are fair, reasonable, and adequate; and (4) the requested costs, fees, and awards are reasonable, I will grant Plaintiff's Motions.

## I. BACKGROUND

As alleged, Delphinus's cybersecurity failures allowed criminals to access and steal current and former employees' "personally identifiable information." (Doc. No. 34 at 1–2; Doc. No. 1 ¶¶ 1, 3, 5.) Some six months after the incident, Delphinus notified former employee Wilsterman of the breach. (Doc. No. 1 ¶¶ 6, 23; Id., Ex. A.) Wilsterman alleged that the breach caused him to suffer fraud and attempted identity theft. (Doc. No. 34 at 3; Doc. No. 1 ¶ 48.)

On April 30, 2024, Wilsterman filed this putative class action, alleging: (1) negligence; (2)

negligence per se; (3) breach of implied contract; (4) unjust enrichment; (5) breach of fiduciary duty; and (6) breach of confidence. (Doc. No. 1 ¶¶ 91–161.) He also sought declaratory relief. (Id. ¶¶ 162–70.)

In September 2025, the Parties reported that they had reached a settlement and were finalizing their agreement. (Doc. No. 19.) Because no Motion for Preliminary Approval of Class Settlement had been filed as of January 14, 2025, I ordered the Parties submit a Joint Status Report within two days. (Doc. No. 22.) Later that same day, Plaintiff filed an Unopposed Motion for Preliminary Approval of Class Action Settlement. (Doc. No. 23.)

On June 10, 2025, without holding a hearing, I denied Plaintiff's Unopposed Motion without prejudice because of "glaring deficiencies in [his] submissions." (Doc. No. 25); Wilsterman v. Delphinus Eng'g, Inc., No. 24-1810, 2025 WL 1655319, at *1 (E.D. Pa. June 10, 2025). Namely: (1) there was no indication that the Parties were assisted by a mediator; (2) "negotiations began and concluded quickly," which "suggest[s] they were not conducted at arm's length, especially given the complex nature of data breach cases"; (3) "there was insufficient discovery to ensure that the Parties 'were aware of the strengths and weaknesses of their case[s]'"; and (4) "the average recovery for each Class Member [$70] will be less than modest," yet "the proposed Class Counsel Fee Award would constitute some 33% of the Settlement Fund—at the top end awarded in similar data breach cases." Id. at *1–3.

On July 8, 2025, Plaintiff filed a Renewed Unopposed Motion for Preliminary Approval of Class Action Settlement, which I referred to Magistrate Judge Craig M. Straw for a Report and Recommendation. (Doc. Nos. 33, 34, 35, 36.) After ordering and receiving additional briefing, Judge Straw recommended that the motion be granted because there were no longer any "'obvious deficiencies' in the proposed settlement and it '[fell] within a range of reason.'" (Doc. Nos. 37,

42, 43 (quoting Gates v. Rohm & Hass Co., 248 F.R.D. 434, 438 (E.D. Pa. 2008)).)

There were no objections to the R&R, and on November 14, 2025, without holding a hearing, I granted in part the Renewed Unopposed Motion for Preliminary Approval, by: (1) conditionally certifying a settlement class; (2) appointing Wilsterman as Class Representative; (3) appointing Cassandra Miller of Strauss Borrelli as Class Counsel; and (4) preliminarily approving the settlement agreement. (Doc. No. 44.) Because, however, there was a discrepancy between the Settlement Agreement and the proposed Notice regarding the amount of counsel fees that Miller could seek, I denied Plaintiff's Motion insofar as I refused to appoint a Settlement Administrator, approve the form and manner of the proposed Notice and Claim Form, approve the proposed Notice Plan, or schedule a Final Approval Hearing until I received a revised Notice. (Id.) Once Plaintiff rectified the discrepancy, I granted the remaining approvals, appointed Simpluris as settlement administrator, and scheduled a Final Approval Hearing for March 31, 2026. (Doc. Nos. 45, 46.)

Plaintiff now moves for final approval of the Settlement Agreement and for approval of counsel fees, expenses, and a service award. (Doc. Nos. 48, 49, 50.) Because, "[a]fter implementation of the initial notice program, the Parties learned [on March 13, 2026] that certain individuals impacted by the Data Breach were inadvertently omitted from the class list provided to the Settlement Administrator" by defense counsel, I: (1) granted the Parties leave to provide notice to the initially omitted Class Members; (2) extended the Objection, Opt-Out, and Claims Deadlines to provide the initially omitted Class Members time to respond; (3) rescheduled the Final Approval Hearing to August 5, 2026; and (4) ordered Plaintiff to file "a supplemental submission to his Motion for Final Approval, including an updated declaration from the Settlement Administrator regarding the supplemental notice and claims process" on or before July 22, 2026.

(Doc. Nos. 51, 52.)

The Parties' July 22 Supplemental Submission erroneously attached the same Notice sent to the originally identified Class Members, and it thus appeared as if the 919 Class Members had been given the superseded Objection, Opt-Out, and Claims Deadlines, as well as the superseded Final Approval Hearing date. (Doc. Nos. 53-2, 54.) After the Parties clarified that the 919 Class Members had in fact received an updated version of the Notice, which listed the correct, extended dates, I conducted the Final Approval Hearing for August 31, 2026. (Doc. Nos. 54, 55, 56.)

## II. DISCUSSION

Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "While the law generally favors settlement in complex or class action cases for its conservation of judicial resources, the court has an obligation to ensure that any settlement reached protects the interests of the class members." In re Aetna Inc., MDL No. 1219, 2001 WL 20928, at *4 (E.D. Pa. Jan. 4, 2001) (citing In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liability Litig., 55 F.3d 768, 784 (3d Cir. 1995)).

### A. Settlement Class Certification: Rule 23 Analysis

On November 14, 2025, I conditionally certified the following Settlement Class under Rule 23(b)(3) as to all Counts:

> All individuals residing in the United States who have been identified by Defendant as potentially having their personally identifiable information (PII) compromised in the Data Breach experienced by Delphinus in October 2023, including all individuals who previously received notice that their PII may have been compromised in connection with the Data Breach.
>
> Excluded from the Settlement Class are: (1) the judges presiding over this Action, and members of their direct families; (2) Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest, and its current or former officers and directors; and (3) Settlement Class Members who submit a valid Request for Exclusion prior

to the Opt-Outs.

(Doc. No. 44 at 4–5.)

No Class Member has objected to class certification. For the reasons that follow, and solely for the purpose of settlement (in accordance with the Settlement Agreement), I will now finally certify the Settlement Class.

***Rule 23(a) Requirements***

The Settlement Class meets all four Rule 23(a) requirements: "(1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." In re Corel Corp. Inc. Secs. Litig., 206 F.R.D. 533, 539 (E.D. Pa. 2002); Fed. R. Civ. P. 23(a).

First, as the Settlement Class ultimately consisted of 3,149 individuals, the Class is so numerous that joinder of all its members is impracticable. (Doc. Nos. 53 at 3, 53-2 at ¶¶ 14–15); Fed. R. Civ. P. 23(a)(1); see also In re Modafinil Antitrust Litig., 837 F.3d 238, 249–50 (3d Cir. 2016) ("'[G]enerally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met'" (quoting Stewart v. Abraham, 275 F.3d 220, 226–27 (3d Cir. 2001))).

Second, as I explained in my Preliminary Certification Order, this matter presents at least the following classwide questions of law or fact: (1) how the data breach occurred; (2) whether Delphinus had a duty to protect PII; and (3) whether the employees were harmed by the breach. (Doc. No. 44 at 5); see Fed. R. Civ. P. 23(a)(2); see also In re Cmty. Bank of N. Virginia Mortg. Lending Practices Litig., 795 F.3d 380, 399 (3d Cir. 2015) (commonality requirement satisfied where the plaintiffs "alleged that the class was subjected to the same kind of illegal conduct by the same entities, and that class members were harmed in the same way, albeit to potentially different extents").

Third, the claims and defenses of the Class Representative are typical of the claims of the

Class, and their interests align with those of absent Class Members. Fed. R. Civ. P. 23(a)(3). The Class Representative's claims arise from the same alleged failure to safeguard personal information that the claims of all Class Members arise from. See Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 598 (3d Cir. 2012) ("If a plaintiff's claim arises from the same event, practice or course of conduct that gives rise to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class." (citing Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 923 (3d Cir. 1992))).

Finally, the Class Representative and Class Counsel have "fairly and adequately protect[ed] the interests of the Class." Fed. R. Civ. P. 23(a)(4). The Class Representative's interests do not conflict with the interests of other Class Members. See Gates v. Rohm & Haas Co., 248 F.R.D. 434, 441 (E.D. Pa. 2008) (inquiring into "whether the representatives' interests conflict with those of the class and whether the class attorney is capable of representing the class" (citations and quotations omitted)). Accordingly, I will finally appoint Jason Wilsterman as Class Representative. Although the procedural history of this matter reflects some errors by Class Counsel, these errors are not so severe as to jeopardize my preliminary adequacy finding. (See Doc. No. 44 at 8 ("Ms. Miller has extensive experience prosecuting complex class actions. Her recent filings confirm that she has adequately represented the Class.")); Fed. R. Civ. P. 23(g).

***Rule 23(b) Requirements***

As I explained in my Preliminary Certification Order, I will certify the Settlement Class under Rule 23(b)(3).

These claims may be certified under Rule 23(b)(3)(B) because "questions of law or fact common to class members predominate over any questions affecting only individual members," and because "a class action is superior to other available methods for fairly and efficiently

adjudicating" this matter. Fed. R. Civ. P. 23(b)(3). First, "questions of law or fact common to class members predominate." Id. "[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." Sullivan v. DB Investments, Inc., 667 F.3d 273, 298 (3d Cir. 2011); see also id. at 297 (explaining that Rule 23(b)(3)'s predominance requirement is more rigorous than Rule 23(a)(2)'s commonality requirement). Here, the Settlement Class Members' claims arise from a single data security and present common questions, including whether Defendant owed and breached a duty to safeguard personal information. (Doc. No. 44 at 5, 7); see In re Wawa, Inc. Data Sec. Litig., No. 19-6019, 2023 WL 6690705, at *5 (E.D. Pa. Oct. 12, 2023) (predominance met when "[t]he issues facing each class member are the same: demonstrating the degree of the [the defendant's] data breach and proving [the defendant's] culpability under Pennsylvania negligence law").

Second, a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3). Given the modest value of any individual claim, the cost and complexity of litigation would likely preclude most of the 3,149 class members from filing suit. See Corra v. ACTS Ret. Servs., Inc., No. 22-2917, 2024 WL 22075, at *5 (E.D. Pa. Jan. 2, 2024). By contrast, the Settlement provides the Settlement Class Members with a clear process to satisfy their claims. See Good v. Nationwide Credit, Inc., 314 F.R.D. 141, 154 (E.D. Pa. 2016) (quoting Amchem v. Windsor, 521 U.S. 591, 620 (1997) ("When assessing superiority and 'confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.'").

### B. Notice

I must "'determine that notice was appropriate before evaluating'" the Settlement on its

merits. Alexander v. Washington Mut., Inc., No. 07-4426, 2012 WL 6021098, at *6 (E.D. Pa. Dec. 4, 2012) (quoting In re Am. Investors Life Ins. Co. Annuity Marketing and Sales Practices Litig., 263 F.R.D. 226, 237 (E.D. Pa. 2009)). There are no objections to the Class Notice or its implementation.

On November 25, 2025, I ruled that the proposed Notice and Settlement Notice Plan satisfied the requirements of Rule 23(e) and due process, and were otherwise fair and reasonable. (Doc. No. 46.)

After I preliminarily certified the Class, Notice was distributed in accordance with my Preliminary Approval Order to the initial 2,231 Class Members whom Defendant had identified. (Doc. No. 50 at 6.) Defendant provided Settlement Administrator Simpluris with the Class Members' contact information, and Simpluris mailed the Notice to those Class Members. (Id. at 6–7.) After implementation of the initial notice program, the Parties discovered that certain Class Members had inadvertently been omitted from the original list that Defendant provided to Simpluris. (Doc. Nos. 51-2.) After I granted the Parties' Motion to Continue Final Approval Hearing and for Leave to Issue Supplemental Notice, Simpluris mailed the Notice to the 918 subsequently identified Class Members. (Doc. Nos. 51, 52, 53-2 ¶ 16.) In total, 98.38% of the 3,149 total Class Members were mailed a Notice that was not returned as undeliverable. (Doc. No. 53-2 ¶¶ 15, 18.) Simpluris also posted the Notice on a dedicated website and created a toll-free phone number for Class Members to call for more information. (Doc. No. 50 at 8.)

The Class Notice adequately informed Class Members of the subject of the lawsuit; the definition of the Class; the terms of the Settlement; Class Counsel's intent to request attorneys' fees, expenses, and service awards for Class Representatives; where to find additional information; and the details of the final fairness hearing, including the time, the place, and how to present

objections. (See Doc. Nos. 45-1, 45-2.)

In these circumstances, I conclude that the Class Notice and distribution of that Notice fully satisfy the requirements of 23(e) and due process. See Lachance v. Harrington, 965 F. Supp. 630, 636 (E.D. Pa. 1997) ("In order to satisfy due process, notice to class members must be 'reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).

**C. Fairness, Adequacy, and Reasonableness of Proposed Settlement**

Under Rule 23, I may approve a settlement where, as here, it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Settlement Agreement provides for the creation of a non-reversionary $350,000 common fund—less Class Counsel's fees and expenses, Simpluris's administrative expenses, and a Service Award to the Class Representative—for the benefit of those individuals whose PII was potentially compromised by Defendant's October 2023 data breach. (Doc. No. 50 at 4.) Class Members may submit a claim for up to $10,000 in "Out of-Pocket Losses" incurred as a result of the Data Breach. (Id. (citing Doc. No. 47-1 ¶¶ 35, 59(i)).) Class Members are eligible to enroll in three years of credit monitoring services. (Id. at 5 (citing Doc. No. 47-1 ¶ 59(iii)).) Class Members may submit a claim for a pro rata Cash Fund payment. (Id. (citing Doc. No. 47-1 ¶ 59(ii)).) After payment of approved claims for Out-of-Pocket Losses and Credit Monitoring Services, the remaining Net Settlement Fund will be distributed pro rata among all claimants submitting valid claims for a Cash Fund Payment. (Id.) Defendant has also agreed to implement certain "security-related measures," whose costs are paid by Defendant, separate and apart from the Settlement Fund. (Id. (citing Doc. No. 47-1 ¶ 70).) In exchange, the Class Members will release and dismiss with prejudice all claims related to this action against Defendant and its

affiliates. (Doc. No. 47-1 ¶ 82); see also Scott v. Bimbo Bakeries USA, Inc., No. 10-3154, 2015 WL 8764491, at *3 (E.D. Pa. Dec. 15, 2015) ("It is settled law within this Circuit that 'a judgment pursuant to a class settlement can bar later claims based on the allegations underlying the claims in the settled class action.'" (quoting In re Prudential Ins. Co. of Am. Sales Practice Litig., 261 F.3d 355, 366 (3d Cir. 2001)).

***Presumption of Fairness***

A proposed class action settlement should be afforded a presumption of fairness if: "(1) the negotiations occurred at arms length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected. In re Cendant Corp. Litig., 264 F.3d 201, 232 n.18 (3d Cir. 2001); In re CertainTeed Fiber Cement Siding Litig., 303 F.R.D. 199, 216 (E.D. Pa. 2014) ("The presumption of fairness may attach even where a class is certified for settlement purposes only . . . ."). Here, the Settlement is entitled to a presumption of fairness because: (1) the Parties' Settlement Agreement is the result of arm's length negotiations; (2) the Parties conducted sufficient discovery; (3) Class Counsel have demonstrated that they are experienced in litigating data breach class actions; and (4) no Class Member has objected to the Settlement Agreement.

***Fairness, Adequacy, and Reasonableness Factors***

The Third Circuit has identified nine factors to assist courts in determining whether a class action settlement should be approved as "fair, adequate and reasonable." Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975). These factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9)

> the range of reasonableness of the settlement fund in light of all the attendant risks of litigation.

In re Cendant, 264 F.3d at 232. When appropriate, courts should also consider:

> (10) the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; (11) the existence and probable outcome of claims by other classes and subclasses; (12) the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; (13) whether class or subclass members are accorded the right to opt out of the settlement; (14) whether any provisions for attorneys' fees are reasonable; and (15) whether the procedure for processing individual claims under the settlement is fair and reasonable.

In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 323 (3d Cir. 1998) (numbers added). Applying these factors, I conclude that the Settlement is fair, adequate, and reasonable.

***Girsh* Factors**

*Factor One: Complexity, Expense, and Likely Duration of Litigation*

This factor supports the Settlement Agreement. "This action is complex as it involves thorny issues regarding the emerging field of data breach liability." Holden v. Guardian Analytics, Inc., No. 23-2115, 2024 WL 2845392, at *5 (D.N.J. June 5, 2024) (citing Fulton-Green v. Accolade, Inc., No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sep. 24, 2019)). Had the Parties not reached a settlement agreement, Plaintiff reports that expert discovery, substantial motion practice, class certification proceedings, dispositive motions, trial and appeal would likely occur. (Doc. No. 50 at 17); see Holden, 2024 WL 2845392, at *5 ("Since formal discovery has not yet begun, significant expense and discovery remain."). Accordingly, the Parties will benefit from the time and resources saved by avoiding further litigation. See In re Nat'l Football League Players

Concussion Injury Litig., 821 F.3d 410, 437–38 (3d Cir. 2016) as amended (May 2, 2016); Fleisher v. Fiber Composites, LLC, Civ. No. 12-1236, 2014 WL 866441, at *11 (E.D. Pa. Mar. 5, 2014).

*Factor Two: The Reaction of the Class to the Settlement*

As I have explained, Simpluris successfully sent Notice to 98.38% of the 3,149 total Class Member. (Doc. No. 53-2 ¶¶ 15, 18.) No Class Members have opted out or objected to the Settlement Agreement. See Chakejian v. Equifax Info. Servs., LLC, 275 F.R.D. 201, 212 (E.D. Pa. 2011) ("Courts have generally assumed that 'silence constitutes tacit consent to the agreement.'" (internal citation omitted)). Moreover, 4.32% of the Class submitted a Claim Form. See Holden, 2024 WL 2845392, at *5 (noting approvingly of a claim rate of 3.8%). Accordingly, this factor favors the Settlement.

*Factor Three: The Stage of the Proceedings and the Amount of Completed Discovery*

I must next consider "the degree of case development that class counsel have accomplished prior to settlement," and whether Class Counsel appreciated the merits of Plaintiff's case before settlement negotiations. In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liabl. Litig., 55 F.3d at 813. "The fact that a case has not proceeded through discovery does not necessarily weigh against settlement approval." P. Van Hove BVBA v. Universal Travel Grp., Inc., No. 11-2164, 2017 WL 2734714, at *7 (D.N.J. June 26, 2017). "Even settlements reached at a very early stage and prior to formal discovery are appropriate where there is no evidence of collusion and the settlement represents substantial concessions by both parties." In re Johnson & Johnson Derivative Litig., 900 F. Supp. 2d 467, 482 (D.N.J. 2012). Although I previously found glaring deficiencies in Wilsterman's submissions, I subsequently concluded that "sufficient pre-suit and informal discovery took place for the parties to negotiate a fair proposed settlement agreement for this reasonably simple data beach class action." (Doc. No. 44 at 2, 4.) Accordingly, this factor weighs in favor of Settlement.

*Factors Four, Five, and Six: The Risks of Establishing Liability, Proving Damages, and Maintaining the Class Action Through Trial*

I must next "'survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement.'" In re CertainTeed, 303 F.R.D. at 217 (quoting In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 537 (3d Cir. 2004)) (addressing Factors Four through Six together). In their Motion for Final Approval, Class Counsel acknowledged that Plaintiff's had risks at class certification, summary judgment, and maintaining class certification at trial. (Doc. No. 50 at 19–20); see, e.g., In re Citrix Data Breach Litig., No. 19-61350, 2021 WL 2410651, at *3 (S.D. Fla. June 11, 2021) ("Data breach cases in particular present unique challenges with respect to issues like causation, certification, and damages."). "[G]iven the real and extensive risks involved in Plaintiffs' case," these factors weigh in favor of approving the Settlement. Holden, 2024 WL 2845392, at *6.

*Factor Seven: Ability of Defendants to Withstand a Greater Judgment*

This factor is "most clearly relevant where a settlement in a given case is less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement." In re Nat. Football League Players' Concussion Inj. Litig., 307 F.R.D. 351, 394 (E.D. Pa. 2015). [W]hen there is no 'reason to believe that [d]efendants face any financial instability[,] . . . this factor is largely irrelevant.'" Id. (quoting Reibstein v. Rite Aid Corp., 761 F.Supp.2d 241, 254 (E.D. Pa. 2011)). Plaintiff contends that "Defendant's ability to pay or to withstand judgement is not at issue." (Doc. No. 50 at 21.) Accordingly, this factor is neutral. See Holden, 2024 WL 2845392, at *6.

*Factors Eight and Nine: Range of Reasonableness of Settlement Fund in Light of Best Possible Recovery and Attendant Risks of Litigation*

These final Girsh Factors are intended to "'evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case.'" In re CertainTeed, 303 F.R.D. at

218 (internal quotation omitted). As I have discussed, Plaintiff faces significant risks in this case. Considering those risks, this settlement for $350,000—in addition to Defendant's agreement to implement additional security measures—is reasonable. See Corra v. ACTS Ret. Servs., Inc., No. 22-2917, 2024 WL 22075, at *9 (E.D. Pa. Jan. 2, 2024) ($350,000 and two years of credit monitoring was reasonable settlement for class of more than 20,000 people); Holden, 2024 WL 2845392, at *6 ("Settlement Agreement amount[ing] to approximately $7.25 per Settlement Class Member" was within the range of reasonableness).

***Prudential* Factors**

Although the Parties do not mention any of the Prudential Factors, I find that the only relevant Prudential Factor—whether Class Counsel's requested attorneys' fees are reasonable—weighs in favor of approval, as I will discuss further *infra*.

In sum, upon review of the record and settlement documents, and after conducting a final fairness hearing and applying the Girsh and Prudential Factors, I find that the Settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); see also In re Nat'l Football League Players Concussion Injury Litig., 821 F.3d at 444 ("In the end, this settlement was the bargain struck by the parties, negotiating amid the fog of litigation. If we were drawing up a settlement ourselves, we may want different terms or more compensation . . . . But our role as judges is to review the settlement reached by the parties for its fairness, adequacy, and reasonableness.").

Accordingly, I will grant final approval of the Settlement pursuant to Rule 23(e).

### D. Fairness and Reasonableness of the Requested Attorneys' Fees, Costs, and Service Awards for Class Representative

Plaintiff has asked me to approve attorneys' fees of $105,000 (30% of the Settlement Fund), payment of $1,830.25 in litigation expenses, and a $5,000 Service Award for the Class Representative. (Doc. Nos. 48, 57.) There are no objections to these requests.

***Attorneys' Fees***

Having appointed Class Counsel in my November 14, 2025 Order, I must now conduct a "thorough judicial review" of Counsel's fee application. (Doc. Nos. 48, 57); Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 192 (3d Cir. 2000) (quoting In re Prudential, 148 F.3d at 333). "Two considerations must play central roles in the assessment of a fee award under Rule 23(h): 1) how the amount awarded stacks up against the benefit given to the class, using either the amounts paid or the sums promised; and 2) whether side agreements between class counsel and the defendant suggest an unreasonable attorney's fee award." In re Wawa, Inc. Data Sec. Litig., 85 F.4th 712, 718–19 (3d Cir. 2023). There is no evidence of any side agreements in this case. (See Doc. No. 47-1.)

"There are two basic methods for calculating attorneys' fees—the percentage-of-recover method and the lodestar method." In re Prudential, 148 F.3d at 333. The percentage-of-recovery method—which compares the amount of attorneys' fees sought to the total size of the fund—"is generally favored in common fund cases because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" Sullivan v. DB Inv., Inc., 667 F.3d 273, 330 (3d Cir. 2011) (quoting In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 300 (3d Cir. 2005) as amended (Feb. 25, 2005)). In determining whether the requested fee award is reasonable under the percentage-of-recovery approach, I must consider:

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups . . . (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement.

In re Diet Drugs, 582 F.3d 524, 541 (3d Cir. 2009) (citing Gunter 223 F.3d at 195 n.1, and In re Prudential, 148 F.3d at 338–40); see also Gunter 223 F.3d at 195 n.1 ("The factors . . . need not be applied in a formulaic way. Each case is different, and in certain cases, one factor may outweigh the rest."). The Circuit recently "added another factor to the inquiry: 'whether side agreements between class counsel and the defendant suggest an unreasonable attorney's fee award.'" Corra, 2024 WL 22075, at *11 (E.D. Pa. Jan. 2, 2024) (quoting In re Wawa, 85 F.4th 712, 718–19 (3d Cir. 2023)).

The lodestar method "is then used 'to cross-check the reasonableness of a percentage-of-recovery fee award.'" Sullivan, 667 F.3d at 330 (quoting In re AT&T Corp., 455 F.3d 160, 164 (3d Cir. 2006)); see also In re Rite Aid, 396 F.3d at 307 ("[T]he lodestar cross-check does not trump the primary reliance on the percentage of common fund method.").

*Percentage-of-Recovery and Gunter Factors*

The Gunter factors support the fee award. I will address briefly each factor here, as I have already considered most of these factors in approving the Settlement Agreement.

First, the Settlement confers benefits on each Class Member. As I have discussed, this Settlement is reasonable in light of the potential Class recovery. Second, there are no objections to either the Settlement or the requested attorneys' fees and costs. With respect to the third and fourth factors, Class Counsel performed competently, despite various stumbles. Ultimately, absent the work of Class Counsel, most Class Members would likely have obtained no recovery. See In re Linerboard Antitrust Litig., No. MDL 1261, 2004 WL 1221350, at *5 (E.D. Pa. June 2, 2004) ("The result achieved is the clearest reflection of petitioners' skill and expertise.'"). Fifth, Class Counsel have litigated this matter on a contingency basis, facing the risk of nonpayment if Plaintiff was not successful. (Doc. No. 48-1 at 14.) Sixth, as discussed below, Class Counsel spent a

combined 240 hours working on this matter. (Id. at 15.) Seventh, the $105,000 award represents 30% of the common fund. (Id. at 1.) This requested fee award falls within the range of reasonableness. See, e.g., Leap v. Yoshida, No. 14-3650, 2015 WL 619908, at *4 (E.D. Pa. Feb. 12, 2015) ("Fee awards in common fund cases generally range from 19% to 45% of the fund."); Holden v. Guardian Analytics, Inc., No. 23-2115, 2024 WL 2845392, at *11 (D.N.J. June 5, 2024) ("However, in class action settlements of data breach cases, attorney fees awards have generally been between 20% to 30% of the settlement."). The eighth factor is irrelevant because there are no other groups. Ninth, the requested fee is comparable to the amount Counsel may have received had this case been subject to a private contingency fee arrangement. In re CertainTeed, 303 F.R.D. at 224 ("In private contingency cases, lawyers routinely negotiate agreements for between 30% and 40% of the recovery." (internal citation omitted)). Finally, this Settlement provides for credit monitoring services and requires Defendant to adopt reasonable data and information security measures, at its own expense.

*Lodestar Cross Check*

I will use the lodestar method "'to cross-check the reasonableness of a percentage-of-recovery fee award.'" Sullivan, 667 F.3d at 330 (quoting In re AT&T, 455 F.3d at 164). I must multiply "the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." In re Rite Aid, 396 F.3d at 305. Here, the lodestar calculation is $206,392.50—306.30 hours at rates ranging from $200 to $800 per hour. (Doc. Nos. 57 ¶ 5, 53-1 ¶ 8); In re Rite Aid, 396 F.3d at 306–07 ("The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting. The district courts may rely on summaries submitted by the attorneys and need not review actual billing records."). Having reviewed the declaration

submitted by Counsel, I am satisfied that these hourly rates are reasonable for a data breach class action such as this one. See Fulton-Green, 2019 WL 4677954, at *12 (rates ranging from $202 to $975 per hour were reasonable); In re Onix Grp, 2024 WL 5107594, at *16 (rates as high as $1,057 per hour were reasonable).

When Class Counsel's requested fee ($105,000) is divided by the lodestar calculation ($206,392.50), the lodestar multiplier is .51. (Doc. No. 57 ¶ 7.) A "lodestar multiplier of less than one, like the lodestar multiplier here, reveals that the fee request constitutes only a fraction of the work that the attorneys billed and thus favors approval." In re Onix Grp., 2024 WL 5107594, at *16.

***Litigation Expenses***

Class Counsel have requested reimbursement of $1,830.25 in expenses. (Doc. No. 57 ¶ 10); Fed. R. Civ. P. 23(h). This request comprises ordinary litigation expenses for attorney travel. (Doc. Nos. 53-1 ¶ 2, 57 ¶¶ 8–10.) I am satisfied that these expenses were reasonably and appropriately incurred during the year and a half in which Class Counsel have prosecuted this action. See, e.g., In re Ikon Office Sol. Sec. Litigation, 194 F.R.D. 166, 192 (E.D. Pa. 2000) ("There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . . *reasonable* litigation expenses from that fund." (emphasis in original)). Accordingly, I will approve Class Counsel's request for reimbursement of expenses.

***Service Awards for Class Representatives***

I have appointed James Wilsterman as Class Representative. Wilsterman now seeks a $5,000 service award, to which there is no objection. (Doc. No. 48-1 at 23; see Docket.) "The approval of contribution or incentive awards is common, especially when the settlement establishes a common fund." In re CertainTeed, 303 F.R.D. at 225 ("'The purpose of these

payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws.'" (quoting Sullivan, 667 F.3d at 333 n.65)).

The Class Representative has expended time and effort on this litigation. He engaged counsel, reviewed the Complaint; made himself available to discuss litigation; and reviewed, considered, and approved the proposed Settlement. (Doc. No. 48-1 at 23.) In these circumstances, the $5,000 service award is reasonable and warranted. See Braun v. Philadelphia Inquirer, LLC, No. 22-4185, 2025 WL 1314089, at *13 (E.D. Pa. May 6, 2025) (permitting a $5,000 service award for each data breach class representative); Bernhard v. TD Bank, N.A., Civil No. 09-4392 (RBK/AMD), 2009 WL 3233541, at *2 (D.N.J. Oct. 5, 2009) ("[C]ourts routinely approve incentive awards to compensate named plaintiffs for services they provided and the risks they incurred during the course of the class action litigation." (quoting Cullen v. Whitman Med. Corp., 197 F.R.D. 136, 145 (E.D. Pa. 2000)).

In sum, I will approve as reasonable the requests for attorneys' fees, reimbursement of litigation expenses, and service awards.

## III. CONCLUSION

For the foregoing reasons, I will grant Plaintiff's Unopposed Motion for Attorneys' Fee Award and Expenses and Service Award and Unopposed Motion for Final Approval of Class Action Settlement. (Doc. Nos. 48, 49.) An appropriate Judgment follows.

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*
Paul S. Diamond, J.